IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | | |
|---|---|---|
| RAYMOND MIZQUES, | ) | Cause No. CV 04-76-GF-CSO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| LANCE HOOVER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On August 14, 2006, this Court issued a Findings and Recommendation regarding Defendant Hoover's Motion for Summary Judgment. (Document 42).  The parties have now consented to assignment of this case to a United States Magistrate Judge for final disposition. (Documents 43 and 44).  Accordingly, the Findings and Recommendation issued August 14, 2006 (Document 42), is withdrawn and the Court instead enters the following:

**I.   STATEMENT OF THE CASE**

        A.   Procedural History

Plaintiff submitted a proposed Complaint and a Motion to proceed in forma pauperis on July 22, 2004.  (Document 1).  On December 9, 2004, Plaintiff's Motion to proceed in forma pauperis was granted and Plaintiff was directed to file an Amended Complaint.  (Documents 4 and 7).  Plaintiff filed supplemental information on December 30, 2004. (Document 8).

Pursuant to 28 U.S.C. § 1915(e)(2) the Court conducted a preliminary screening of Plaintiff's Complaint and Amended Complaint. (Documents 7 and 11).  On September 13, 2001, the Court issued an Order finding that liberally construed, Plaintiff's Amended Complaint with regard to Defendant Hoover was not entirely without merit and ordered it served upon Defendant Hoover.  (Document 10).  The other Defendants were dismissed by Order dated September 6, 2005. (Document 18).

On February 7, 2006, Defendant Hoover, filed a Motion for Summary Judgment, a Memorandum in Support, a Statement of Uncontroverted Facts, and a Notice and Warning to Plaintiff. (Documents 22-25).  However, Hoover did not confer with Plaintiff prior to filing his motion and therefore did not comply with D. Mont. L.R. 7.1(j).[1]  On March 7, 2006, Hoover filed a "reply," stating that Plaintiff should have filed a response on or before March 3, 2006, and that he had not done so. (Document 26).

On March 9, 2006, Mizques filed a response to Hoover's reply. (Document 27).  He stated that he did not respond to Hoover's motion because he did not receive the documents that Hoover certified had been sent to him.  Mizques filed an affidavit in support of his explanation.  (Document 27–

_____

[1]Rule 7.1(j) provides that "[w]ithin the text of each motion submitted to the Court, the moving party shall note that other parties have been contacted concerning the motion and whether other parties object to the motion" (emphasis added).

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PAGE 2

Plaintiff's Resp. to Def.'s Reply, p. 1; Document 28–Mizques Affidavit, p. 1, ¶ 3).

On March 13, 2006, Hoover re-filed and re-served his Motion for Summary Judgment, Brief in Support, Statement of Uncontroverted Facts, a Notice and Warning to Plaintiff and a Notice of Re-Service. (Documents 29-33).  Again, he did not comply with D. Mont. L.R. 7.1(j).

B.    <u>Facts</u>

As set forth below, Defendant Hoover did not file affidavits or other authenticated evidence in support of his motion. Accordingly, the facts are given in the light most favorable to Plaintiff as set forth in Plaintiff's Complaint (Document 5)[2] and Plaintiff's Affidavit. (Document 39-3).

Plaintiff arrived at Crossroads Correctional Center (hereinafter "CCC") on September 30, 2003.  Prior to his arrival at CCC, Plaintiff suffered from some infrequent pains in his abdominal area.  These pains intensified soon after he was incarcerated at CCC. (Document 39-3, Mizques Affidavit, ¶ 3).  On November 3, 2003, Plaintiff visited CCC's medical department as a result of these pains.  Plaintiff was examined by a nurse and referred to a doctor. (Document 39-3, Mizques Affidavit, ¶ 4).

_____

[2]"A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc).

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PAGE 3

In December 2003, Plaintiff was transported to Marias Medical Center in Shelby, Montana and diagnosed with gallbladder problems.  On January 1, 2004, Plaintiff was advised that he needed surgery for his gallbladder problem. (Document 39-3, Mizques Affidavit, ¶ 5).

Plaintiff was transported back to the Marias Medical Center three more times for various pre-operative medical procedures, all without incident or objection.  Defendant Hoover was one of Plaintiff's transporting officers during a March 1, 2004 visit to the medical center. (Document 39-3-Mizques Affidavit, ¶ 7).

In preparation for gallbladder surgery, Plaintiff was moved to CCC's Special Management Unit (hereinafter "SMU").  Upon being moved, Plaintiff asked the officer in the SMU whether he would be allowed to take a shower in the morning prior to his surgery. The SMU officer told Plaintiff that he could take a shower and that the information would be passed on to the next shift.

At approximately 5:30 a.m. on the morning of March 31, 2004, Defendant Hoover woke Plaintiff to transport him to the medical center for surgery.  When Plaintiff asked to take a shower, Defendant Hoover told him no.  Plaintiff explained to Defendant Hoover that he had been advised the night before that he could take a shower before his surgery.  Defendant Hoover told Plaintiff there was not enough time for him to take a shower. Plaintiff understood this, accepted it and never spoke of a

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PAGE 4

shower again.  (Document 39-3, Mizques Affidavit, ¶ 9).

Plaintiff then asked if he could brush his teeth.  Defendant Hoover said yes and had Plaintiff's water turned on in the cell. Plaintiff brushed his teeth and then started washing his hands and face.  As soon as Plaintiff started washing his hands, Defendant Hoover shouted, "I'm not going to stand here and watch you take a bird bath?  As a matter of fact, I don't have to take you anywhere?"  Defendant Hoover then shut Plaintiff's food-slot and left. (Document 39-3, Mizques Affidavit, ¶ 10).

Plaintiff stated that it took him two minutes to wash up and he was ready to go.  When Defendant Hoover returned to the cell, he yelled for Plaintiff to come to the door and sign a refusal of treatment form.  Plaintiff jumped up, came to the door and said, "I'm not signing nothing.  I need to get to the medical center for surgery.  I've been waiting for three months for this appointment.  I'm in pain all the time." (Document 1–Plaintiff's Complaint, p. 5).  Plaintiff said he told Defendant Hoover again that he needed to get to the hospital for surgery.  Defendant Hoover had another officer come and initial the form and then Defendant Hoover left. (Document 1–Plaintiff's Complaint, p. 5).

Plaintiff contends that Defendant Hoover did not ask him to take his clothing off for a strip search and Plaintiff did not refuse to follow any of Defendant Hoover's orders.  He argues that he had been waiting for this surgery for many months and

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PAGE 5

would have done whatever was asked to facilitate the surgery.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, the court finds that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c)(2002); Lundy v. Union Carbide Corp., 695 F.2d 394, 396 (9th Cir. 1982); cert. denied, 474 U.S. 848 (1985).

The initial burden is upon the moving party to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "Interpreting Federal Rule of Civil Procedure 56[,] the Ninth Circuit has held that it is 'the burden of the moving party to demonstrate the absence of any material fact.' . . .  A court should deny a motion for summary judgment if 'the movant's papers . . . themselves demonstrate the existence of a material issue of fact.'"  Cristobal v. Siegel, 26 F.3d 1488, 1494-95 (9th Cir. 1994) (emphasis added) (internal quotations and citations omitted).

The court's ultimate inquiry is to determine whether the "specific facts" set forth by the non-moving party, coupled with undisputed background facts, are such that a rational jury might return a verdict in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PAGE 6

## III.  DISCUSSION

As set forth above, Defendant Hoover has the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  Federal Rule of Civil Procedure 56(c) provides that a motion for summary judgment,

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

While Defendant briefed the issues and presented documents, he did not provide any authenticated or admissible evidence.  The Court can only consider admissible evidence in ruling on motions for summary judgment and authentication is a "condition precedent to admissibility."  Orr v. Bank of American, NT & SA, 285 F.3d 764 (9th Cir. 2002).  The Ninth Circuit has repeatedly held that "unauthenticated documents cannot be considered in a motion for summary judgment."  Id. citing Cristobal v. Siegel, 26 F.3d 1488, 1494 (9th Cir. 1994); Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550-51 (9th Cir. 1989); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1182 (9th Cir. 1988); Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987).

An affidavit from Defendant Hoover or Officer DeVera authenticating their March 31, 2004 incident reports would have

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PAGE 7

allowed the Court to consider those reports.  Similarly, the
Court could have considered Defendant Hoover's interrogatory
responses had Hoover complied with Rule 33(b) of the Federal
Rules of Civil Procedure and verified those responses.  He did
not.  Although technically, the Court can consider Defendant's
responses to Plaintiff's requests for admissions, those responses
alone are not sufficient evidence of Defendant Hoover's position
in this case to justify summary judgment.  Without the
presentation of authenticated evidence setting forth Defendant
Hoover's version of the facts, Defendant Hoover cannot meet his
burden of demonstrating the absence of a genuine issue of
material fact.

Even if the Court considers Defendant Hoover's
unauthenticated evidence, summary judgment is not appropriate.
Plaintiff's claim arises under the Eighth Amendment of the United
States Constitution.  The Eighth Amendment requires that
prisoners receive adequate medical care. Estelle v. Gamble, 429
U.S. 97, 104 (1976); see also McGuckin v. Smith, 974 F.2d 1050,
1059 (9th Cir. 1992) (citing Estelle), overruled on other grounds
by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir.
1997).  To state an arguable section 1983 claim for failure to
provide medical care, a prisoner must allege that a defendant's
"acts or omissions [were] sufficiently harmful to evidence a
deliberate indifference to serious medical needs." Estelle, 429

U.S. at 106; <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1111 (9th Cir. 1986), <u>cert. denied</u>, 481 U.S. 1069 (1987).

Deliberate indifference under the Eighth Amendment involves the consideration of two elements:  "[1] the seriousness of the prisoner's medical need[;] and [2] the nature of the defendant's response to that need."  <u>McGuckin</u>, 974 F.2d at 1059; <u>see also</u> <u>Lolli v. County of Orange</u>, 351 F.3d 410, 419 (9th Cir. 2003). That is, a plaintiff must demonstrate "'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care.  Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." <u>Clement v. Gomez</u>, 298 F.3d 898, 904 (9th Cir. 2002)(citing <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1076 (9th Cir. 1995)).

The objective component requires the showing of a serious medical need.  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." <u>McGuckin</u>, 974 F.2d at 1059 (9th Cir. 1992) (quoting <u>Estelle</u>, 429 U.S. at 104).

The subjective component of deliberate indifference considers the nature of the defendant's response to the serious medical need and whether the defendant had a culpable mental state, which is "'deliberate indifference' to a substantial risk

of serious harm." <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998)(quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994)). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.  "[T]he official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." <u>Frost</u>, 152 F.3d at 1128 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 302-303 (1991)).

Taking the evidence in the light most favorable to Mizques, he has established a constitutional violation by alleging that Defendant Hoover acted with deliberate indifference to serious medical needs by failing to transport him for a surgery scheduled by Mr. Mizques' physician.

First, Plaintiff has demonstrated that he had a serious medical need.  <u>See</u> <u>Lopez</u>, 203 F.3d at 1131-32; <u>McGuckin</u>, 974 F.2d at 1059-60 ("[T]he existence of chronic and substantial pain [indicates] that a prisoner has a 'serious' need for medical treatment.").  As examples of serious medical needs the Ninth Circuit has listed the following:

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain[.]

<u>McGuckin</u>, 974 F.2d at 1059-60 (citing <u>Wood v. Housewright</u>, 900

F.2d 1332, 1337-41 (9th Cir. 1990) (citing cases) and Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989)). Mr. Mizques had been suffering abdominal pains even prior to his arrival at CCC. He was first seen for these pains in November 2003. He was told he needed surgery in January 2004 and had been waiting for that surgery for three months. Plaintiff told CCC officials that his pains felt like he was being hit by a baseball bat. (Document 39-3, p. 7). After Defendant Hoover refused to transport Plaintiff for surgery, Plaintiff suffered more frequent and severe pain, he could not eat properly and was denied pain medications. Mr. Mizques' physician had scheduled Mr. Mizques for gallbladder surgery and therefore the doctor presumably believed it to be a serious medical need worthy of treatment.

Defendant argues that since Plaintiff's condition did not constitute an emergency, he cannot establish a serious medical need. Defendant cites to a Northern District of New York case for the proposition that "The standard for serious medical needs contemplates 'a condition of urgency that may result in degeneration or extreme pain.'" Baumann v. Walsh, 36 F.Supp.2d 508, 510 (N.D.N.Y. 1999) citing Chance v. Armstrong, 143 F.3d 698, 702 (2nd Cir. 1998). However, both the Baumann and the Chance cases found that there was a serious medical need for many of the reasons present here in this case. In those cases the plaintiffs were suffering from an affliction which caused pain

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PAGE 11

over a long period of time and they each received medical care
for those conditions over a long period of time.  Those cases
tend to support the finding that Mr. Mizques suffered from a
serious medical need.  The law in this circuit does not support
Defendant's argument that only those conditions requiring
emergency attention satisfy the "serious medical need" element.
The jails and prisons have a greater obligation than to just
provide emergency medical care.  Plaintiff has sufficiently
demonstrated that he suffered from a serious medical need.

The subjective component requires a showing that defendant
was deliberately indifferent to a substantial risk of serious
harm.  "Prison officials are deliberately indifferent to a
prisoner's serious medical needs when they deny, delay, or
intentionally interfere with medical treatment." See Hamilton v.
Endell, 981 F.2d 1062, 1066 (9th Cir. 1992)(quoting Hunt, 865
F.2d at 201); see also Lopez, 203 F.3d at 1131-32 (citing Estelle
v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251
(1976)), for the principle that a prisoner "can establish
deliberate indifference by showing that officials intentionally
interfered with his medical treatment").

Further, "a prison official acts with deliberate
indifference when he ignores the instructions of the prisoner's
treating physician or surgeon." Wakefield v. Thompson, 177 F.3d
1160 (9th Cir. 1999); see also Ortiz v. City of Imperial, 884

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PAGE 12

F.2d 1312, 1314 (9th Cir. 1989) (per curiam).

The conflict in this case revolves around whether Plaintiff refused Defendant Hoover's order to step toward the cell door so that he could be strip searched ("strip out") as part of the transport procedure.  Defendant Hoover contends that Plaintiff refused to comply with these orders, was determined to be a security threat and as such could not be transported outside the facility.

Plaintiff contends that he was never ordered to "strip out," he complied with each of Defendant Hoover's orders and was fully cooperative in the transport procedure.  Plaintiff explained that when he started to wash his hands and face Defendant Hoover stated, "I'm not going to stand here and watch you take a bird bath, as a matter of fact I don't have to take you anywhere, forget it."

If the Court takes Plaintiff's allegation to be true (as it must), Defendant Hoover became frustrated with Plaintiff because he was washing his face and hands and therefore cancelled the transport.  Medical personnel from the prison and Plaintiff's treating physician had given instructions for Plaintiff to be transported for surgery and Plaintiff told Defendant Hoover that he needed the surgery because he was in constant pain.  These allegations that Defendant Hoover ignored instructions from medical personnel and Plaintiff's complaints of pain, are

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PAGE 13

sufficient to support a finding that Defendant Hoover was
deliberately indifferent when he intentionally interfered with
Plaintiff's scheduled surgery.

Defendant Hoover relies heavily on Judge Farris' opinion in
the Wood v. Housewright case. (See Document 30, p. 6).  However,
the Reinhardt dissenting opinion that there was an Eighth
Amendment violation in the Wood case is actually the rule of law
in the Ninth Circuit.  Judge Farris and Judge Hug agreed that the
named Defendants in the Wood case were not liable for the
constitutional violations alleged and therefore affirmed the
judgment.  However, both Judge Hug and Judge Reinhardt agreed
that, "The confiscation of [Wood's] sling and the inordinate
delay in providing essential medical care clearly constituted
'deliberate indifference,' and [Wood's] resultant pain and
suffering clearly meet the standard set forth in Estelle v.
Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)." Wood,
900 F.2d at 1336; see also McGuckin, 974 F.2d at 1060, Note 12.

Moreover, Defendant tried to analyze this case much like the
way Judge Farris analyzed the Wood case by suggesting that since
Plaintiff had been receiving continuous treatment by healthcare
providers, Defendant Hoover was not deliberately indifferent to
Plaintiff's medical needs.  As Judge Reinhardt suggested, Judge
Farris misperceived the issue in Wood and Defendant misperceives
the issue in this case.  This is not a claim about Defendant

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PAGE 14

Hoover providing inadequate medical treatment.  Plaintiff's claim is that when Defendant Hoover refused to transport Plaintiff for his surgery, he intentionally interfered with previously prescribed medical treatment.  That, as set forth above constitutes deliberate indifference to a serious medical need.

Defendant next cites to Wood for the proposition that "substantial harm must have occurred from the delay for the constitutional violation to occur."  (Document 30, p. 7 citing Wood, 900 F.2d at 1335).  However, as set forth in McGuckin, a finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary.  See Wood, 900 F.2d at 1339-40.

Again, Defendant cited Judge Farris' opinion in Wood where he suggested that only delays in medical treatment that cause "substantial harm" violate a defendant's constitutional rights. See Wood, 900 F.2d at 1335 (opinion of Farris, J.).  However, Judge Reinhardt and Judge Hug explicitly rejected that suggestion. See id. at 1339-40 (opinion of Reinhardt, J.); id. at 1336 (opinion of Hug, J.) (joining that portion of Judge Reinhardt's opinion); see also id. at 1336 (opinion of Reinhardt, J.) (noting that Section I of his opinion was joined by a majority of the panel).  Thus, the Reinhardt opinion that substantial harm is not required is the rule in the Ninth Circuit.

The Court does agree that a defendant's delay in providing medical treatment will not constitute deliberate indifference unless the delay was harmful.  Hunt, 865 F.2d at 200 (quoting Shapley v. Nevada Board of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)).  Although the harm need not be substantial, the seriousness of the harm caused by the delay when the defendant could have acted to prevent the harm is indicative of deliberate indifference.  McGuckin, 974 F.2d at 1060.

Plaintiff contends in his statement of material facts that from March 31, 2004 to April 14, 2004 (when his surgery eventually occurred) he endured more frequent and severe pain and could not eat properly.  He also alleges that he was denied prescription pain injections due to his prescription running out. Thus, Plaintiff has established, at least for purposes of Defendant Hoover's motion, that the resulting delay in his medical treatment was harmful.

The Court notes that Defendant Hoover did file objections to the previously entered Findings and Recommendation. (Document 47).  The Court has reviewed those objections and has concluded that the issues raised have been properly addressed in this Order.

Based on the foregoing, the Court enters the following:

## ORDER

Defendant Hoover's motions for summary judgment (Documents

22 and 29) are **DENIED**.

DATED this 28th day of August, 2006.


/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge